**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MOMODU BONDEVA KENTON GONDO,**<br>**EVODIO CALLES HENDRIX,**<br>**DANIEL THOMAS HERSL,**<br>**WAYNE EARL JENKINS,**<br>**JEMELL LAMAR RAYAM, and**<br>**MAURICE KILPATRICK WARD,**<br>            **Defendants.** | **Criminal No. CCB 17-106** |

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>        **v.**<br>**THOMAS ALLERS,**<br>            **Defendant.** | **Criminal No. CCB 17-0452** |

## <u>MEMORANDUM</u>

Between 2018 and 2019 defendants Momodu Gondo, Evodio Hendrix, Daniel Hersl, Wayne Jenkins, Jemell Rayam, Marcus Taylor, Maurice Ward, and Thomas Allers, all former members of the Baltimore Police Department (BPD), were convicted in the above captioned matters of racketeering conspiracy and related offenses for their involvement in a conspiracy which involved robbing citizens in the course of the officers' police duties. Though all of the defendants have been sentenced, the matter of restitution in Gondo's, Hendrix's, Hersl's, Jenkins's, Rayam's, Ward's, and Allers's cases has not been finalized, largely due to Mr. Taylor's premature appeal to the Fourth Circuit Court of Appeals of the court's August 30, 2019, order

1

granting the government's motion for restitution as to all defendants. (ECF 520). The court having finalized and perfected the order of restitution as to Taylor, the court will now finalize the order of restitution as the remaining defendants in this case.

## BACKGROUND

After all of the defendants in this matter had been sentenced the government submitted a global motion for restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, seeking to repay victims of various robberies committed by the defendants. (CCB-17-106, ECF 500). The government submitted a table summarizing the amounts taken in the relevant robberies, identified by date, to which each defendant either pled guilty or was found guilty at trial, with citations to the specific paragraphs of each defendant's plea agreement where he admitted to a robbery in the amount listed in the table or to the specific paragraphs of a defendant's presentence report in the case of the defendants (Taylor and Hersl) who went to trial. (*See* ECF 500 at 4–5). All of the defendants who pled guilty had expressly agreed, as part of their plea agreements, to the entry of an order of restitution in the full amount of the victim's losses. (*See* CCB-17-106, ECF 158 (Hendrix) at  5–6; CCB-17-106, ECF 161 (Ward) at 5–6; CCB-17-106, ECF 196 (Rayam) at 5–6; CCB-17-106, ECF 200 (Gondo) at 7; CCB-17-106, ECF 254 (Jenkins) at 11; CCB-17-452, ECF 20 (Allers) at 8).

Only Taylor and Ward opposed the motion, arguing (1) that the victims of their offenses were not victims as defined by the MVRA because the money stolen from them was proceeds from their illegal drug activities and (2) that the government had failed to adequately prove the amount of restitution requested. (CCB-17-106, ECFs 506, 507). On reply, the government contended that victim status under the MVRA is not dependent on whether property taken is derived from lawful activity. (CCB-17-106, ECF 513). On Friday, August 30, 2019, the court granted the government's motion for restitution, finding that the motion was unopposed except by

Taylor and Ward, and that "the restitution requested is well supported by the facts in Ward's plea agreement and the jury verdict as to Taylor." (CCB-17-106, ECF 520). The court further ordered that Amended Judgments would issue. (*Id.*). Three days later, on Monday September 2, 2019, a court holiday in observance of Labor Day, Taylor filed a notice of appeal as to the restitution order. (CCB-17-106, ECF 521). At this point, the court had not had an opportunity to finalize the order of restitution as to any of the defendants nor to issue Amended Judgments.

After Taylor filed an opening brief in the Fourth Circuit, the parties agreed that the notice of appeal had been prematurely filed and filed a consent motion requesting that the Fourth Circuit remand the case for the order of restitution to be "perfected and finalized" and to stay the briefing on appeal. *See* Case No. 19-7246, ECF 23. The Fourth Circuit granted the motion on August 12, 2020. (CCB-17-106, ECF 578). On remand, the court granted the parties' request for supplemental briefing to allow the parties to resolve any outstanding issues as to restitution. (CCB-17-106, ECF 587). On July 12, 2021, the court issued a memorandum and order resolving restitution as to Taylor including a finding that the victims' alleged illegal activities did not bar their claim for restitution. (CCB-17-106, ECF 682, 683). An amended judgment issued on July 30, 2021. (CCB-17-106, ECF 695). The court will now finalize the orders of restitution as to the remaining defendants.

## DISCUSSION

The MVRA requires that restitution be paid for certain offenses against property in which an identifiable victim or victims have suffered a physical injury or pecuniary loss. 18 U.S.C. § 3663A(c)(1). The statute defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. . . . " *Id.* § 3663A(a)(2). Restitution under MVRA is mandatory—if the

defendant has committed a covered offense and caused physical injury or pecuniary loss to a victim, the court is required to order full restitution irrespective of an individual's ability to pay. *See id.* §§ 3663A(a)(1), (c), 3664(f)(1)(A); *United States v. Ritchie*, 858 F.3d 201, 207, 216 (4th Cir. 2017). When restitution is ordered under the MVRA, the court must follow the procedures for calculating and ordering restitution set forth in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3663A(d). The court previously found restitution was warranted under the MVRA against Gondo, Hendrix, Hersl, Jenkins, Rayam, Ward, and Allers, to victims in this case in the amounts requested by the government. (*See* CCB-17-106, ECF 500 at 4–5 [requesting $59,376 as to Allers, $47,700 as to Gondo, $204,000 as to Hendrix, $27,893 as to Hersl, $239,300 as to Jenkins, $79,000 as to Rayam, $204,500 as to Ward]; CCB-17-106, ECF 520 [granting the government's motion]).

Upon the determination of the amount of restitution owed to each victim, the court must specify in the restitution order "the manner in which, and the schedule according to which, the restitution is to be paid" and in doing so must consider "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." *Id.* § 3664(f)(2). The court must make factual findings "keying the payment schedule to these factors and demonstrating the feasibility of the schedule." *United States v. Leftwich*, 628 F.3d 665, 668 (4th Cir. 2010) (citing *United States v. Dawkins*, 202 F.3d 711, 717 (4th Cir. 2000)). The court will address the payment schedules for each of the above-named defendants in turn.

### I.    Gondo

Gondo's most recent employment was as an officer with the BPD. In that position he earned $70,000 per year, plus overtime. (CCB-17-106, ECF 384 ¶ 200). Gondo's projected earnings and income upon release are very difficult to predict, given that law enforcement had

been his career for over ten years at the time he was sentenced, a career to which he almost certainly will not be able to return. Based on his level of education, a high school diploma with some college coursework, (see id., ¶ 197–99), the court believes it is unlikely Gondo will, at least in the short term, earn close to his prior salary. Gondo's financial resources appear to be greatly diminished at this time, but perhaps not permanently so. Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. See 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule depending on Gondo's financial circumstances during supervision. *See Dawkins*, 202 F.3d at 716 n.2; 18 U.S.C. § 3664(f)(3)(B).

## II.    Rayam

Rayam's most recent employment was as an officer with the BPD. (CCB-17-106, ECF 495 ¶ 232). Rayam appears to have owed no debts at the time of sentencing (*id.* ¶ 234), but he did have child support obligations, (*id.* ¶¶ 218). Rayam's projected earnings and income upon release are very difficult to predict, given that law enforcement or security had been his career for approximately fifteen years at the time he was sentenced, a career to which he almost certainly will not be able to return. Rayam's financial resources appear to be greatly diminished at this time, but perhaps not permanently so, given his level of education, a bachelor's degree in marketing. (*Id.* ¶ 231).  Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. See 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule

depending on Rayam's financial circumstances during supervision. See *Dawkins*, 202 F.3d at 716 n.2; 18 U.S.C. § 3664(f)(3)(B).

### III.    Hendrix

Hendrix's most recent employment was as an officer with the BPD. (CCB-17-106, ECF 181 ¶ 96). Hendrix's projected earnings and income upon release are very difficult to predict, given that law enforcement had been his career for approximately eight years at the time he was sentenced, a career to which he almost certainly will not be able to return. Based on his level of education, a high school diploma, (*id.*, ¶ 95), the court believes it is unlikely Hendrix will, at least in the short term, earn close to his prior salary. Hendrix's financial resources appear to be greatly diminished at this time, but perhaps not permanently so. Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. See 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule depending on Hendrix's financial circumstances during supervision. See *Dawkins*, 202 F.3d at 716 n.2; 18 U.S.C. § 3664(f)(3)(B).

### IV.    Hersl

Hersl's most recent employment was as an officer with the BPD. In that position he earned approximately $80,000 per year, plus overtime. (CCB-17-106, ECF 431 ¶ 100). Hersl appears to have been in debt at the time of sentencing. (*Id.* ¶¶ 107–08). Hersl's projected earnings and income upon release are very difficult to predict, given that law enforcement had been his career for approximately ten years at the time he was sentenced, a career to which he almost certainly will not be able to return. Based on his level of education, a GED with some college coursework, (*id.* ¶ 98), the court believes it is unlikely Hersl will earn close to his prior salary. Hersl's financial

resources appear to be greatly diminished at this time, but perhaps not permanently so. Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. See 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule depending on Hersl's financial circumstances during supervision. See *Dawkins*, 202 F.3d at 716 n.2; 18 U.S.C. § 3664(f)(3)(B).

## V.    Jenkins

Jenkins's most recent employment was as an officer with the BPD. (CCB-17-106, ECF 412 ¶ 216). At the time of sentencing, Jenkins owned a home and two rental properties. (*Id.* ¶ 217). Jenkins's projected earnings and income upon release are very difficult to predict, given that law enforcement had been his career for approximately fifteen years at the time he was sentenced, a career to which he almost certainly will not be able to return. Based on his level of education, a high school diploma (*id.* ¶ 214), the court believes it is unlikely Jenkins will, at least in the short term, earn close to his prior salary. Jenkins's financial resources appear to be greatly diminished at this time, but perhaps not permanently so. Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. See 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule depending on Jenkins's financial circumstances during supervision. *See Dawkins*, 202 F.3d at 716 n.2; 18 U.S.C. § 3664(f)(3)(B).

## VI.    Ward

Ward's most recent employment was as an officer with the BPD (ECF 182 ¶ 101). Ward's projected earnings and income upon release are very difficult to predict, given that law enforcement had been his career for approximately fourteen years at the time he was sentenced, a career to which he almost certainly will not be able to return. Based on his level of education, a high school diploma with some college coursework, (*id.*, ¶ 100), the court believes it is unlikely Ward will, at least in the short term, earn close to his prior salary. Ward's financial resources appear to be greatly diminished at this time, but perhaps not permanently so. Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. See 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule depending on Ward's financial circumstances during supervision. See *Dawkins*, 202 F.3d at 716 n.2; 18 U.S.C. § 3664(f)(3)(B).

## VII.    Allers

Allers's most recent employment was as an officer with the BPD. In that position he earned approximately $98,000 per year. (CCB-17-452; ECF 23 ¶ 163). Allers also had significant assets at the time of sentencing (*Id.* 165). Allers's projected earnings and income upon release are very difficult to predict, given that law enforcement had been his career for over twenty years at the time he was sentenced, a career to which he almost certainly will not be able to return. Based on his level of education, a high school diploma with some college coursework, (*id.* ¶ 160–62), the court believes it is unlikely Allers will, at least in the short term, earn close to his prior salary. Allers's financial resources appear to be greatly diminished at this time, but perhaps not

permanently so. Accordingly, the court will order that the restitution is due in full immediately, but will waive interest, and will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. See 18 U.S.C. §§ 3572(d), 3612(f)(3)(A), 3664(f)(3)(B). The Probation Officer also will be authorized to recommend to the court an adjustment in the monthly payment schedule depending on Allers's financial circumstances during supervision. See *Dawkins*, 202 F.3d at 716 n.2; 18 U.S.C. § 3664(f)(3)(B).

## CONCLUSION

Restitution will be finalized as to Gondo, Hendrix, Hersl, Jenkins, Rayam, Ward, and Allers. For the foregoing reasons, for each defendant, restitution will be due in full immediately, interest will be waived, and the court will impose a nominal payment schedule of $100 per month during the term of supervision if the entire amount of restitution is not paid prior to the commencement of supervision. A separate Order follows. Amended Judgments will issue. Following the court's initial order of restitution, the government provided, under seal, the victims' names, addresses, and restitution amounts owed, to be included in the sealed Statement of Reasons accompanying the Amended Judgment. Should the government have any updates to the victims' addresses, the government will be directed to provide that information to the Clerk's Office.

  8/25/2021                                     /S/                              
Date                                            Catherine C. Blake
                                              United States District Judge